## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PRINTING TEXTILES, LLC DBA BERGER TEXTILES | : <br> : <br> : <br> : <br> : <br> Plaintiff, : <br> : <br> v.  : **Court No. 23-00192** <br> : <br> UNITED STATES : **PUBLIC DOCUMENT** <br> : <br> : <br> : <br> Defendant. : <br> : |

## COMPLAINT

Plaintiff Printing Textiles, LLC dba Berger Textiles ("Plaintiff'" or "Berger"), by and through its attorneys, hereby alleges and states as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1. Plaintiff contests the August 15, 2023 final scope ruling of the U.S. Department of Commerce ("Commerce") in which Commerce determined that canvas banner matisse ("CBM') produced in, and exported from, the People's Republic of China ("China") and imported by Plaintiff, as described in its Scope Request, is subject to the scope of the antidumping duty ("ADD") order on certain artist canvas from China. See Memorandum to James Maeder, Associate Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, from Erin Begnal, Director, Office III, AD/CVD Operations, regarding Final Scope Ruling on the Antidumping Duty Order on Certain Artist Canvas from the People's Republic of China: Berger Textiles' Canvas Banner Matisse ("Scope Ruling").

1

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) as this action is filed pursuant to sections 516A(a)(2)(A)(ii) and (B)(vi) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and (B)(vi), to review a final determination by Commerce as to whether merchandise is within the scope of antidumping and/or countervailing duty orders.

## STANDING OF PLAINTIFF

3. Plaintiff is a U.S. importer of merchandise that Commerce has held to be within the scope of the antidumping duty order on artist canvas from China. See Notice of *Antidumping Duty Order: Certain Artist Canvas from the People's Republic of China*, 71 FR 31154 (June 1, 2006) (the "*Order*"). Therefore, Plaintiff is an interested party within the meaning of 19 U.S.C. § 1516a(f)(3), 19 U.S.C. § 1677(9)(A), and 28 U.S.C. § 2631(k)(1).

4. Plaintiff requested and participated in the administrative proceedings that are the subject of this action and accordingly has standing to commence this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINESS

5. On September 14, 2023, Plaintiff initiated this action by the filing of a Summons within 30 days after the mailing of the Scope Ruling to Plaintiff of August 16, 2023. Plaintiff is filing this Complaint within thirty days of the filing of the Summons. Therefore, both the Summons and Complaint have been timely filed pursuant to Rules 3(a)(2) and 6(a) of this Court and Section 516A(a)(2)(A)(ii) of the Tariff Act, 19 U.S.C. § 1516a(a)(2)(A)(ii).

## FACTS/BACKGROUND

  6. On June 1, 2006, Commerce issued the *Order* on certain artist canvas from China.

  7. Therein Commerce defined the scope of the *Order*, as follows:

**Scope of the Order**

The products covered by this order are artist canvases regardless of dimension and/or size, whether assembled or unassembled, that have been primed/coated, whether or not made from cotton, whether or not archival, whether bleached or unbleached, and whether or not containing an ink receptive top coat. Priming/coating includes the application of a solution, designed to promote the adherence of artist materials, such as paint or ink, to the fabric. Artist canvases ( *i.e.*, pre–stretched canvases, canvas panels, canvas pads, canvas rolls (including bulk rolls that have been primed), printable canvases, floor cloths, and placemats) are tightly woven prepared painting and/or printing surfaces. Artist canvas and stretcher strips (whether or not made of wood and whether or not assembled) included within a kit or set are covered by this proceeding.

Artist canvases subject to this order are currently classifiable under subheadings 5901.90.20.00 and 5901.90.40.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Specifically excluded from the scope of this order are tracing cloths, "paint–by-number" or "paint–it-yourself" artist canvases with a copyrighted preprinted outline, pattern, or design, whether or not included in a painting set or kit. [1] Also excluded are stretcher strips, whether or not made from wood, so long as they are not incorporated into artist canvases or sold as part of an artist canvas kit or set. While the HTSUS subheadings are provided for convenience and customs purposes, our written description of the scope of this proceeding is dispositive.

  8. The scope of the *Order* makes clear that the subject merchandise requires a priming/coating that promotes the adherence of artistic materials and there is no requirement for an ink receptive top coat.

  9. On December 15, 2022, Plaintiff requested that Commerce determine whether certain CBM, which Plaintiff imports from China, are outside the scope of the Order. *See* Letter from Kyl J. Kirby, Kyl J. Kirby, Attorney and Counselor at Law, P.C., to the Secretary of Commerce re Application of Scope Ruling on Antidumping Duty Order on Certain Artist Canvas from the People's Republic of China (December 15, 2022) ("Scope Request").

3

10. The products described in Scope Request consist of 600 denier 100% polyester fabric woven (i.e., warp and weft) filament fiber, weighing approximately 270 GSM, that has been coated with polyvinyl acetate / acrylate type polymers. One side of the fabric has been coated and is visible to the naked eye. The coated side has hydrophobic sealing and fireproof agents. The bottom priming/coating does not promote the adherence of artistic materials. The fabrics are imported as rolls in various lengths with no designs.

11. Widely, publicly known uses include, canvas (art reproduction/stretched), roll-up display system, banner product, display x-kite system, wall covering, décor applications, and tenting.

12. There is substantial evidence on the record that CBM is properly excluded from the scope of the ADD *Order*.

13. In its Scope Request, Plaintiff presented factual information and arguments as to why the CBM is excluded from the scope of the *Order*.

14. On February 17, 2023, a purchaser of Petitioner assets (Ecker Textiles, LLC with U.S. production unproven) and supposed U.S. domestic manufacturer (Charta Group, Inc. d/b/a Permalite, Inc. with U.S. production unproven) filed comments, without submitting factual or document evidence, disproving Plaintiff's assertions that CBM's priming/coating does not promote the adherence of artistic materials.

15. On April 20, 2023, Commerce extended its 180-day deadline for issuing a decision on the scope ruling request to August 16, 2023.

16. On August 15, 2023 Commerce issued its *Final Scope Ruling on Berger CBM,* erroneously concluding the CBM is within the scope of the *Order* on certain artist canvas from China without issuing any additional questions to Plaintiff.

17. There is no evidence on record that CBM's priming/coating promotes the adherence of artistic materials.

18. There is evidence on record that CBM is not manufactured using the same materials that would cause CBM's bottom priming/coating to promote the adherence of artistic materials.

19. Commerce did not test CBM as to whether it has been "primed/coated" where the "[p]riming/coating includes the application of a solution, designed to promote the adherence of artist materials, such as paint or ink, to the fabric" "whether or not containing an ink receptive top coat". Instead, Commerce ignored testing and determinations made by two independent experts where the testers stated that CBM's priming/coating does not promote the adherence of artistic materials.

20. Commerce disagreed with Berger's claims that the scope of the *Order* is unlawfully vague.

21. Commerce disagreed with Berger's assertion that Commerce's prior scope rulings unlawfully expanded the scope of the *Order*.

22. Commerce held that pursuant to 351.225(k)(1), the CBM is within the scope of the *Order*. Because it determined that the (k)(1) factors were determinative of the question, Commerce did not address any of the (k)(2) factors.

23. In its submission to Commerce, Berger also provided substantial evidence that the CBM was distinct from in-scope artist canvas in terms of physical characteristics, expectations of ultimate purchasers, ultimate use, channels of trade, and the manner in which they were advertised.

## STATEMENT OF CLAIMS

5

24. In the following respects, and for other reasons apparent from the record of the administrative proceeding, Plaintiff asserts that the *Order* is void for vagueness and unconstitutional, that Commerce unlawfully expanded the scope of the *Order*, and Berger's coated fabrics fall outside the scope of the *Order* (i.e., the product is expressly not covered by the plain language of the scope of the order). The Scope Ruling is not otherwise supported by substantial evidence on the record and/or is not in accordance with law.

## COUNT ONE

25. Paragraphs 1 through 24 are adopted and incorporated herein by reference.

26. Contrary to Commerce's decision, the *Order* is void for vagueness and unconstitutional.

27. The *Order* defines "[p]riming/coating includes the application of a solution" Specifically, it states that "designed to promote the adherence of artist materials" according to its function. Commerce must give effect to this sentence, which states an essential physical characteristic of the articles included within the scope and specifies the purpose for which the priming/coating must be designed. However, Commerce failed to give effect to the purpose and essential physical characteristic of the priming/coating. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

28. Neither Petitioner, nor the agencies discussed/defined the meaning of "adherence" as it pertains to the scope of the *Order* during the investigation leading up to the *Order*. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

29. Commerce has unlawfully relied on a one-liner from the U.S. International Trade Commission ("ITC") where the ITC stated, "{a}rtists' canvas is a surface for the

6

graphic presentation of painted or printed images. It is made from woven fabric that is primed and coated ('gessoed') to accept paints or inks and is sold in a variety of shapes, sizes, textures, and formats." The ITC unlawfully went beyond its role to determine that a domestic industry will be harmed by reason of imports of that merchandise, or by reason of sales (or the likelihood of sales) of that merchandise for importation. Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

30. Commerce's consideration of Plaintiff's Scope Request and determination that the scope contains language that includes, or "may be reasonably interpreted to include," the product in question is unlawful. Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

31. Commerce's interpretation of "adherence" is "arbitrary, capricious, or an abuse of discretion" and is unsupported by substantial evidence and/or is otherwise not in accordance with law.

32. In its efforts to avoid a nullity in the language of the *Order*, Commerce has instead created totally new physical characteristics requirements in which every conceivable coated fabric is within the scope of the *Order*. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

33. The record is clear with Commerce's unlawful shifting interpretations of the scope language. Concerning the priming/coating, Commerce regularly interchanged adherence with receptive/receptivity terms. Commerce also added purpose requirements such as graphical, uniform surface, allow for acceptance, aid application, etc. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

34. Commerce failed to recognize, as stated by Petitioner, there is no ink receptive top coat physical characteristic of the articles included within the scope of the *Order*. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

35. Commerce made a scope determination (otherwise interpreted) that conflicts with (contrary to) the *Order's* terms and Commerce interpreted the *Order* in a way that changed the *Order's* scope, beyond any "broad authority" to interpret the scope of the *Order* or to otherwise gap fill/define the scope of an order. Commerce's interpretations are "arbitrary, capricious, or an abuse of discretion" and is unsupported by substantial evidence and/or is otherwise not in accordance with law.

36. CBP and Commerce enforced the *Order* without providing a fair warning to Berger. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

37. The *Order* is unenforceable and unlawful as such and thus a violation of Plaintiff's XIV Amendment due process rights.

## COUNT TWO

38. Paragraphs 1 through 37 are adopted and incorporated herein by reference.

39. Contrary to Commerce's decision, Commerce unlawfully expanded the scope of the *Order*.

40. Commerce relied on scope rulings as primary interpretive sources where Commerce created totally new physical characteristics/purpose requirements and where Commerce shifted its interpretations of the scope language causing scope creep. Commerce's

conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

41. Commerce's statement that "Neither Berger Textiles nor any other party challenged Commerce's findings in those scope ruling" is neither relevant nor supported by law. Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

42. CBP and Commerce enforced the *Order* without providing a fair warning to Berger. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

43. The *Order* is unenforceable and unlawful as such and thus a violation of Plaintiff's XIV Amendment due process rights.

## COUNT THREE

44. Paragraphs 1 through 43 are adopted and incorporated herein by reference.

45. Commerce's decision to include CBM in the *Order* is unsupported by substantial evidence of record and is otherwise not in accordance with law.

46. Commerce did not consider the essential physical characteristic, i.e., "priming/coating includes the application of a solution, designed to promote the adherence of artist materials in its decision". Instead, Commerce focused on use language but use language is limited by essential physical characteristic language. Even then Commerce failed to recognize that materials can occur on either the coated or uncoated side of the fabric where Commerce considered only the coated side. Commerce also failed to recognize non-artist canvas uses, including canvas, roll-up display system, banner product, display x-kite system, wall covering, décor applications, tenting, outdoor short-term needs, tradeshow lightweight

applications of large dimensional displays. Commerce's rationale is arbitrary, capricious, or an abuse of discretion. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

47. Commerce's assertion that CBM's "primed/coated side of the fabric is receptive to artist materials" failed to show that CBM's priming/coating was "designed to promote the adherence of artist materials". Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

48. CBM is clearly not designed to designed to promote the adherence of artist materials. Instead, as demonstrated in the Scope Request, the priming/coating is designed to convert a canvas, is required to stiffen the fabric, and provides whiteness and higher opacity to the translucent polyester fabric. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

49. Commerce's finding that the record contains substantial evidence that Plaintiff is a producer market CBM for use in art reproduction is misguided. Use language in the scope is limited by the essential physical characteristic language where Commerce failed to show that CBM was designed to promote the adherence of artist materials. Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

50. Commerce is incorrect that Plaintiff has not distinguished its priming/coating solution from solutions that cause a fabric to become subject artist canvas. The record is replete with Petitioner intentions in its statements such as those below:

- "It's critical to recognize that in order to manufacture print canvas the exact same fabric, gesso and manufacturing process is employed"
- "Print Canvas … manufactured in the same way, using the same equipment and same materials, as other forms of Artist Canvas"

10

- "Print Canvas is identical in all respects to other Artist Canvas, except for the additional priming with in ink-receptive topcoat that some print canvas still undergoes, and is produced by the same process on the same machinery"
- "Tara Materials' gesso is composed of Latex, titanium dioxide (Ti02), calcium carbonate (CaCo3) and water"
- "Tara Materials believes that all artist canvas gesso uses these materials"
- "gesso" is a "specific coating formula" with "compounds utilized in making specialized latex paint"
- "Pigment (titanium dioxide) and calcium carbonate mixed with acrylic polymer emulsion. Acrylic gesso contains both the ground and sizing together"
- "generations to come" gesso, resists yellowing, preserves the canvas, and has greater adhesion
- "All of our coatings are specially formulated to complement and enhance the unique inherent characteristics of the natural fibers as well as to protect the canvas fibers against acidic deterioration with a buffered neutral PH sizing"

Plaintiff's clearly distinguishes its CBM priming/coating made of polyvinyl acetate/acrylate type polymers that are not "designed to promote the adherence of artist materials". The coated side of the product is not for the adherence of paint, ink or other artistic materials. The coated side is for hydrophobic purposes and fire resistance. This makes possible intended uses of CBM for outdoor short-term needs, tradeshow lightweight applications for large dimensional displays, and tenting. One side of the product has been left uncoated for possible use as a print canvas (i.e., to accept the dye sublimation). The uncoated side allows for processes that include heating for solvent ink sets, heat curing for latex, ultraviolet light for ultraviolet curable inks, and a calendaring process for dye sublimation. In a wall coverings application, the coated side of the fabric is applied to the wall as wall coverings. Berger's CBM is not "generations to come" priming/coating that resists yellowing, preserves the canvas, and has greater adhesion. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

51.     Commerce ignored testing of two independent parties demonstrating that CBM's priming/coating does not promote the adherence of artistic materials. None of the

secondary interpretive sources within the Plaintiff's Scope Inquiry Application conflict with the primary interpretive sources. *See* 19 C.F.R. § 351.225(k)(1)(ii). Instead, Commerce unlawfully mischaracterized Plaintiff's third-party expert that no chemical analysis exists that can characterize "adherence" and no standardized tests are available to measure "adherence" to mean, apparently that no tests could support essential physical characteristic determination because of the Plaintiff's "overly narrow definition of adhesion". None of the secondary interpretive sources within the Plaintiff's Scope Request conflict with the primary interpretive sources. *See* 19 C.F.R. § 351.225(k)(1)(ii). Unlike other scope inquiries, neither Commerce relied on testing nor performed testing to make a determination whether the merchandise in question fell within the *Order* based on an essential physical characteristic, a priming/coating that promotes the adherence of artistic materials. Importantly, U.S. Customs and Border Protection ("CBP") did not adequately test for the essential physical characteristic and CBP mistakenly interpreted that CBM necessarily falls within the scope of the Order because a "laboratory analysis … was conducted that the product … is coated with an acrylate type polymer". Commerce's dismissal of the third-party testing based on the expert's "subjective qualitative judgement" is unlawful. The expert is well-qualified to determine the available testing. Commerce failed to state that if the items cannot be tested, the *Order* would be void and unenforceable. Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

52. Commerce erroneously held that "19 CFR 351.225(k)(1) materials demonstrate that Commerce and the ITC have defined 'promote the adherence' of artist materials to mean 'allow for acceptance of,' 'improve{} the receptivity of canvas to,' or 'increase{} the canvas' receptivity to' artist materials." To the contrary, the *Order* is void for vagueness and

unconstitutional and Commerce unlawfully expanded the scope of the *Order*. Also too ITC unlawfully went beyond its role to determine that a domestic industry will be harmed by reason of imports of that merchandise, or by reason of sales (or the likelihood of sales) of that merchandise for importation. Simply put, Commerce's rationale is arbitrary, capricious, or an abuse of discretion. Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

53. Commerce is wrong in its assertion that "the record contains evidence that CBM has a priming/coating layer that increases the canvas' receptivity to artist materials." Testing by two independent experts clearly shows that CBM's priming/coating does not promote the adherence of artistic materials. Plaintiff also disagrees with Commerce's claim "there is no requirement in the scope that the priming/coating be located on a specific portion of the artist canvas." The language in the scope (i.e., whether or not containing an ink receptive top coat) and numerous statements above by the Petitioner show otherwise. CBM's priming/coating is designed for reasons other than to promote the adherence of artistic materials. Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

54. Commerce clearly misconstrues the crux of the *Order*, an essential physical characteristic, a priming/coating includes the application of a solution, designed to promote the adherence of artist materials. Commerce stated that "Berger Textiles has not demonstrated that the producer does not apply CBM's priming/coating layer for graphical purposes". The graphical purposes consideration is a prime example of unlawful scope creep and is not the crux of the *Order*. Regarding Commerce's continued "priming/coating layer does not increase the canvas' receptivity to paint, ink, or other artistic materials" consideration, Plaintiff has

shown time and again that CBM's priming/coating is designed for reasons other than to promote the adherence of artistic materials. While Plaintiff's third-party expert made an "absorption" comment, the same expert stated that the priming/coating "does not nor is it intended to provide adherence, adhesion of the ink. The fabric provides a smooth surface and it does not function to smooth the surface of 100% polyester fabric." Commerce's failure to address this point renders its scope determination as unsupported by substantial evidence.

55.     Commerce's scope placement reliance on "printable canvases" based on the Tara Print Canvas Scope Ruling and Plaintiff recognizing CBM as "canvas" is without merit. Simply put, CBM does not have the essential physical characteristic, a priming/coating includes the application of a solution, designed to promote the adherence of artist materials. Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

56.     Commerce unlawfully placed reliance on its scope creep with notated scope rulings such as Impact Images PFCPU, Global Textile's Blockout Fabric and Backlit Fabric, and RV Print. Commerce relied on scope rulings as primary interpretive sources where Commerce created totally new physical characteristics/purpose requirements and where Commerce shifted its interpretations of the scope language causing scope creep. Regarding RV Print, Commerce relied upon that Plaintiff "does not identify any differences that render the RV Print Scope Ruling inapplicable as a 19 CFR 351.225(k)(1) source." Commerce clearly missed Plaintiff's assertions in Plaintiff's Scope Request stating that Commerce yet again continued to unlawfully expand the scope of the *Order* with its greatest leap yet and Commerce unlawfully relied on a single sentence in the ITC final publication in the Views of the Commission section to justify its scope creep stating. Unlike RV Print where there was

one test that showed possibly that the coating faired better, in all of the Plaintiff's tests, the priming/coating had the same or worse results when compared to the uncoated side. Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

57. Even with Plaintiff's CBM Scope Ruling, Commerce continued down the same path of scope creep. There, Commerce stated, "Berger Textiles does not provide evidence that such agents prevent promoting the adhesion of artist materials." Plaintiff firmly posits that CBM does not have the essential physical characteristic, a priming/coating includes the application of a solution, designed to promote the adherence of artist materials. Commerce's conclusion is unsupported by substantial evidence and/or is otherwise not in accordance with law.

## COUNT ELEVEN

58. Paragraphs 1 through 57 are incorporated by reference.

59. In its Scope Request, Plaintiff demonstrated that the factors that Commerce is supposed to consider pursuant to 19 C.F.R. § 351.225(k)(2) (the "(k)(2) factors") demonstrated that Plaintiff's CBM is outside the scope of the Order.

60. In its Scope Ruling, Commerce did not examine any of the (k)(2) factors.

61. Commerce's failure to examine the (k)(2) factors renders its Scope Ruling as unsupported by substantial evidence.

## PRAYER FOR RELIEF AND JUDGMENT

62. Wherefore, Plaintiff respectfully requests that the Court:

   a. enter judgment in its favor;

   b. declare with respect to the issues raised in this Complaint that the *Order* is

    void for vagueness and unconstitutional, that Commerce unlawfully expanded the scope of the *Order*, and Berger's coated fabrics fall outside the scope of the *Order* (i.e., the product is expressly not covered by the plain language of the scope of the order), and that the Scope Ruling is unsupported by substantial evidence and/or is otherwise not in accordance with law;

c. remand this matter to Commerce with instructions to issue determinations that Plaintiff's CBM are excluded from the scope of the Order;

d. Order CBP to refund Plaintiff any monies collected on its imports as a result of the *Order*;

e. Award Plaintiff a judgment for costs, including reasonable attorney fees, in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

f. provide such other relief as the Court deems just and proper.

                                                  Respectfully submitted,

                                                  /S/ Kyl J. Kirby

                                                  **KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.**
                                                  1400 Lipscomb Street
                                                  Fort Worth, TX 76104
                                                  Tel: (214) 632-0841
                                                  *Counsel to Printing Textiles, LLC dba Berger Textiles*

Date: September 15, 2023