# UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE:    THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

—————————————————————————  :
:
PRINTING TEXTILES, LLC DBA BERGER TEXTILES,  :
:
    Plaintiff,  :
:
v.  : **Court No. 23-00192**
:
UNITED STATES,  : **PUBLIC DOCUMENT**
:
    Defendant,  :
:
ECKER TEXTILES, LLC,  :
:
    Defendant-Intervenor.  :
—————————————————————————  :

**PLAINTIFF'S REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Kyl J. Kirby
**KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.**
1400 Lipscomb Street
Fort Worth, TX 76104
Tel: (214) 632-0841
*Counsel to Printing Textiles, LLC dba Berger Textiles*

Date: June 24, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................... ii

  I.     INTRODUCTION ……………………………………...…….………... 1

  II.    SUMMARY OF ARGUMENT …………………………………………... 1

  III.   ARGUMENT ................................................................. 1

     A.  Commerce Misapplied The Primary Criteria For Determining Scope Under 19 C.F.R. § 351.225 By Failing To Consider The 19 C.F.R. § 351.225(k)(1) And Thereby Expanding The Scope Of The Order ……………………………… 1

     B.  The Order and Commerce's Impermissibly Unlawful Interpretation Denied Berger Adequate Notice And Commerce Failed To Address Due Process Concerns Of Vague Language In The Scope Of The Order ……………………………......... 5

     C.  Commerce's Plain Language And K(1) Factor Analysis Of Order Scope Language Is Unreasonable, Arbitrary, And Not Supported By Law …………….………... 7

  IV.   CONCLUSION AND RELIEF SOUGHT ........................................... 18

i

# TABLE OF AUTHORITIES

**Cases**

*Adams Thermal Sys., Inc. v. United States*, 279 F.Supp.3d 1195 (Ct. Int'l Trade 2017) …. 5

*AK Steel Corp.* v. *United States,* 226 F.3d 1361 (Fed. Cir. 2000) ………………….…... 2

*Allegheny Bradford Corp. v. United States*, 28 CIT 830, 342 F. Supp. 2d 1172 (2004) …. 7

*Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374 Fed. Cir. 2009)* …………....... 4

*Bond St. v. United States*, 774 F.Supp.2d 1251 (Ct. Int'l Trade 2011) …………..………. 12

*Duferco Steel, Inc. v. United States,* 296 F.3d 1087 (Fed. Cir. 2002) ……………........ 2

F*loral Trade Council v. United States* , 709 F. Supp. 229 (CIT 1989) …………………... 5

*Global Commodity Grp. LLC v. United States*, 709 F.3d 1134 (Fed. Cir. 2013) ……..…. 12

*Grupo Acerero S.A. de C.V. v. United States*, 615 F.Supp.3d 1339 (Ct. Int'l Trade 2023) . 5

*Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed. Cir. 1998) …………………….... 13

*Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487 (Fed. Cir. 2020) …...…. 7

*Tri Union Frozen Prods., Inc. v. United States*, 161 F.Supp.3d 1333 (Ct. Int'l Trade 2016) ……………………………………………………………………………………... 5

*Wheatland Tube C v. United States,* 161 F.3d 1365 (Fed. Cir. 1998) ……………............ 3

*Whirlpool Corp. v. United States*, 144 F.Supp.3d 1296 (Ct. Int'l Trade 2016) …………... 3

**Regulations/Rules**

19 C.F.R. § 351.104(a)(1) …………………………………………………………..… 5

19 C.F.R. § 351.225(k)(l) ………………………….…………….......…....……..…… 3, 8, 11

Fed.R.Evid. 201(b) …………...……………………………………………………… 4

Fed.R.Evid. 201(c) …………...……………………………………………………… 5

Fed.R.Evid. 201(d) …………...……………………………………………………… 4

## I.    INTRODUCTION

On behalf of Plaintiff, Printing Textiles, LLC dba Berger Textiles ("Berger"), we respectfully submit this reply to the response briefs of Defendant, United States, and Defendant-Intervenor, Ecker Textiles, LLC ("Ecker"). *See Defendant's Response to Plaintiff's Motion For Judgment On The Agency Record*, April 25, 2024, ECF No. 20 ("Def.'s Resp. Br.") and *Response Brief of Defendant-Intervenor Ecker Textiles, LLC to Plaintiff's Motion For Judgment on the Agency Record*, April 25, 2024, ECF No. 21 ("Ecker's Resp. Br."), respectively. At the outset, Berger denies all allegations set forth in the Def.'s Resp. Br. and Ecker's Resp. Br. and Berger reasserts arguments made by Berger in its *Brief in Support of Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record*, February 26, 2024, ECF No. 19 (Pla.'s Br.)

## II.    SUMMARY OF ARGUMENT

Berger asserts that Commerce unlawfully expanded the scope of the *Order*, that the *Order* is void for vagueness and unconstitutional, and Berger's CBM falls outside the scope of the *Order* (i.e., the product is expressly not covered by the plain language of the scope of the *Order*). The Scope Ruling is not otherwise supported by substantial evidence on the record and/or is not in accordance with law. Responses by the respondents did not change these conclusions.

## III.    ARGUMENT

### A.   Commerce Misapplied The Primary Criteria For Determining Scope Under 19 C.F.R. § 351.225 By Failing To Consider The 19 C.F.R. § 351.225(k)(1) And Thereby Expanding The Scope Of The *Order*.

Contrary to Commerce's stance as pointed out by Defendant, when read in the entirety, the plain meaning and context of the reference "designed to promote the

adherence of artist materials" in the scope language compels a narrow interpretation of the words "priming/coating". Def.'s Resp. Br. 22.[1] See also the same argument made by Ecker. Ecker's Resp. Br. 15. Otherwise, Commerce unlawfully renders the language as "mere surplusage". *AK Steel Corp.* v. *United States,* 226 F.3d 1361, 1370 (Fed. Cir. 2000). Throughout this matter and this response brief Berger clearly demonstrates that Commerce interpreted the scope in a manner that is contrary to its terms and Commerce continually changed the scope of the *Order*. Def.'s Resp. Br. 22. Although Ecker believes that the scope "language is explicit and unambiguous" and that "This description presents a straightforward and objectively verifiable standard to identify in-scope merchandise: (1) is the product a primed/coated canvas (2) to which has been applied a solution designed to promote the adherence of artist materials, such as paint or ink, to the canvas fabric (3) resulting in a tightly woven prepared painting and/or printing surface. Products meeting these criteria are covered", Ecker provides no response as to Commerce's continuous shifting language. Ecker's Resp. Br. 12. Simply put, Commerce did not "carefully considered the information presented by [Berger] and [] determined that the scope contains language that includes, or 'may be reasonably interpreted to include,'[CBM]." (quoting *Duferco Steel*, 296 F.3d at 1094-95). Def.'s Resp. Br. 28-29, 35. Certainly Commerce's interpretation of designed to promote the adherence of artist materials is not "consistent with how Commerce and the [International Trade Commission ("ITC")] have interpreted this term throughout the history of this proceeding." *Id*. First, as explained in the Section C. below, Commerce has unlawfully relied on ITC's interpretation which has furthered

---

[1] Plaintiff references the Antidumping Public Record, **ECF No. 15-2**, as "**P.R.**", and the Antidumping Confidential Record as "**C.R.**", **ECF No. 15-3**.

scope expansion and offended void for vagueness principles. Second, contrary to Defendant's belief, Commerce unlawfully expanded the *Order* because it relied on flawed (k)(1) sources to interpret the plain language of the scope as it relates to the priming/coating requirement. *Id*. at 30. It cannot be said that Commerce properly used these sources under 19 C.F.R. 351.225(k)(1) to interpret, but rather Commerce expanded the *Order*. *Id*. The record is riddled with such expansions as evidenced by Berger. Pla.'s Br. at 12-20. A conclusory "provide(s) additional clarity" reasoning does not lawfully support Commerce's decision. Def.'s Resp. Br. 32. Nor does Commerce's justification for the continual shifts as "over time" "whether a specific product falls within the scope" … by taking into consideration … any prior applicable analyses conducted of the scope". P.R. at 9. Contrary to Commerce's belief, past interpretive rulings on whether a product falls within the scope do result in an increasingly vague scope. P.R. 23 at 9. "Past rulings and reliance upon § 351.225(k)(1) cannot save a scope determination that is based on an unreasonable interpretation of the scope language." *Whirlpool Corp. v. United States*, 144 F.Supp.3d 1296, 1303 (Ct. Int'l Trade 2016). In light of the shifts, Commerce was required to elevate, consider primary other secondary sources, such as dictionary definitions. Def.'s Resp. Br. 29. None of the parties in the instant matter provided a "rationale [that is] not arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). Also relevant, To no avail, somehow Commerce tries to save the day by stating that Berger and other parties should have challenged the same rulings where the parties received no notice and were not a parties to the actions. P.R. 23 at 9, Def.'s Resp. Br. 31. There can be no other reason for the continual shifts than the inevitable scope creep. Def.'s Resp. Br. 31. Indeed, again, the record is riddled with

instances where Commerce unlawfully added new characteristics to the scope. Def.'s Resp. Br. 32, Pla.'s Br. at 12-20. Although Ecker stated that "The plain language of the *Order* on Artist Canvas unambiguously describes Berger Textiles' CBM" (Ecker's Resp. Br. 13), it seems too that Ecker has fallen for the scope creep. It states that "Berger Textiles' own scope request establishes that CBM precisely meets the criteria for coverage. … made of polyester fabric … that has been coated for use as printing media. … CBM thus qualifies as coated canvas, with the coating used on it to provide ink transfer properties. … it involves application of "multiple coatings to the polyester" to permit ink, one of the specifically-identified "artist materials", to adhere. … The description in United States Patent 5,853,899 further corroborates that CBM's coating is intended for printer ink receptivity. … It suffices for coverage that a fabric is coated with 'a solution, designed to promote the adherence of artist materials. … The argument appears to be premised on the faulty notion that in-scope products must have a paint-receptive first coating." Ecker's Resp. Br. 12-15, 23.

Moreover, the "generally known", photographs and descriptions from etailers demonstrate Commerce's scope creep with absurd results and are relevant as such. Pla.'s Br. at 22-23. Contrary to Defendant's position, the Court should consider the absurd facts. This Court and others in this circuit allow "generally known" facts. "[A] court may, at any stage of the proceeding, take judicial notice of any fact "not subject to reasonable dispute because: (1) it is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b), (d). The court may take judicial notice on its own without a request, but "must take judicial notice if a party requests it and the court is supplied with

the necessary information." Fed.R.Evid. 201(c)." *Tri Union Frozen Prods., Inc. v. United States*, 161 F.Supp.3d 1333, 1336 (Ct. Int'l Trade 2016). The *Axiom Res. Mgmt., Inc.* relied upon by Defendant concerned Commerce procedures that are arguably more formal, including the administrative record being defined. Def.'s Resp. Br. 32. 19 C.F.R. § 351.104(a)(1) (defining the administrative record). Moreover, Commerce gave no opportunity to provide additional evidence to support its absurd argument. "An incomplete record will frustrate judicial review when the absent materials are 'sufficiently intertwined with the relevant inquiry' so that 'the decision can[not] be reviewed properly without' them. [F*loral Trade Council v. United States*, 709 F. Supp. 229, 230 (CIT 1989)." *Grupo Acerero S.A. de C.V. v. United States*, 615 F.Supp.3d 1339, 1345 (Ct. Int'l Trade 2023). Importantly, Ecker did not object to the "generally known" facts.

"The *Adams Thermal Sys., Inc.* case relied upon also stands in contrast to Berger's case. Def.'s Resp. Br. 32. There, "The reasoning of the Final Scope Ruling does not compel the conclusion that the scrap shavings ATS describes, which are not produced so as to achieve a specific shape or form, would be 'aluminum extrusions' as defined by the scope language." *Adams Thermal Sys., Inc. v. United States*, 279 F.Supp.3d 1195, 1208 (Ct. Int'l Trade 2017). Here, the final scope ruling places the etailer acrylic coated fabric, the same description as Tara's acrylic coated fabric, directly in the line of fire.

Contrary to Berger's assertions, Defendant argues that Tara and the agencies discussed the meaning of neither 'promote' nor 'adherence' as it pertains to the scope of the *Order*. Def.'s Resp. Br. 33. Berger is simply at a loss with its search that the terms were indeed discussed. Defendant instead relies on unlawful language as discussed throughout the matter and this response brief. *Id*. It is clear that Commerce has instead

expanded the *Order* and caused the case to be void for vagueness. Commerce's interpretation of the scope and its determination that CBM is covered by the language of the *Order* was not reasonable and is unsupported by substantial evidence. *Id*. at 33-34. Simply put, Commerce unlawfully expanded the scope of the *Order* and Commerce's scope interpretation exceeded the limits of a (k)(1) analysis and is unsupported by substantial evidence.

   **B.  The *Order* and Commerce's Impermissibly Unlawful Interpretation Denied Berger Adequate Notice And Commerce Failed To Address Due Process Concerns Of Vague Language In The Scope Of The *Order***

   Berger disagrees with Defendant's claim that Commerce's interpretations of the *Order* does not raise serious due process concerns because such vague and open-ended language has caused absurd results in antidumping duties being imposed on importers without adequate notice. Def.'s Resp. Br. 34. Throughout the matter and this response brief Berger has consistently asserted that Commerce's interpretation of the plain language of the scope, its reliance on prior scope rulings, and its reliance on ITC determinations was unlawful during its journey to clarify, interpret, and apply the plain language of the scope of the *Order*. *Id*. at 34-35. Indeed, Berger was deprived of adequate notice and due process. *Id*. Contrary to what Defendant argues, Berger clearly demonstrated that the *Order* is vague and open-ended. *Id*. Berger listed out five instances in its initial brief to substantiate its claim. Pla.'s Br. at 11, 15, 16, 17, 18. The "generally known" photographs and descriptions add to the absurdity of Commerce's behavior and should be considered as discussed in the section above. Def.'s Resp. Br. 34. Also as discussed in the section above, Commerce's interpretive scope rulings do result in an unlawful increasingly vague scope and do not provide clarity for the scope of the case. *Id*. Defendant again tries to rely on the save the day assertion in the section above that neither Berger nor any other party

challenged Commerce's findings in those scope rulings. This irrelevant argument does not supplant Commerce's duty to follow the rules under 19 C.F.R. § 351.225. Certainly Commerce did "nullify portions of [the] [O]rder's scope language". *Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1190 (Ct. Int'l Trade 2004). Def.'s Resp. Br. 36. Concerning Defendant's contentions with the *Tai-Ao Aluminum (Taishan) Co.* case, Defendant misses the point. *Id*. With Commerce's continual language shifting, it did not write the *Order* with sufficient detail so as to provide Berger adequate notice. Pla.'s Br. at 26. As discussed in the section above, *Adams Thermal Systems* stands in opposite. Here the final scope ruling places the etailer acrylic coated fabric, the same description as Tara's acrylic coated fabric, directly in the line of fire.

Commerce's interpretations of the *Order* raise serious due process concerns because such vague and open-ended language has caused absurd results in antidumping being imposed on importers without adequate notice. Respectfully, Berger requests Commerce to find that it unlawfully expanded the scope of the *Order* and the *Order* is void for vagueness and unconstitutional. Commerce's consideration of Berger's Scope Request and determination that the scope contains language that includes, or "may be reasonably interpreted to include" CBM is unlawful. Additionally, Commerce unlawfully expanded the scope of the *Order* and Commerce's scope interpretation exceeded the limits of a (k)(1) analysis and is unsupported by substantial evidence.

**C. Commerce's Plain Language And K(1) Factor Analysis Of *Order* Scope Language Is Unreasonable, Arbitrary, And Not Supported By Law**

The respondents perpetuate the same deficiencies as Commerce in arguing that Commerce's scope determination is supported by substantial evidence and in accordance with law. Def.'s Resp. Br. at 7, 10, 15, 27-28, Ecker's Resp. Br. at 17-19. Simply put,

contrary to Defendant, as demonstrated below, errored in its task of "examining the CBM described in [Berger's] Scope Request in the context of the language of the scope of the *Order*" and its finding that "the description of the subject merchandise, coupled with the sources described in 19 C.F.R. § 351.225(k)(1), dispositive as to whether CBM is ultimately covered by the scope." *Id*. at 10. Commerce's cherry picking, as Defendant has pointed out, led to an unlawful decision that "record evidence submitted by Berger demonstrated that CBM is both primed/coated and meets the definition of an artist canvas" because CBM's priming/coating is "for the purpose of converting a fabric into a canvas" and "is required to stiffen the fabric[,] giving it the stiffness properties of a canvas' and 'provides whiteness and higher opacity to the translucent polyester fabric." *Id*. at 10-11. Commerce obviously did not read Berger's declaration in total. The declaration directly contradicts Commerce's cherry picking with the statements below:

> "The bottom priming/coating function is to stiffen the fabric and add opacity. It is a very thin layer and contributes only slightly to absorption of ink. ***It does not nor is it intended to provide adherence, adhesion of the ink.*** The fabric provides a smooth surface and it does not function to smooth the surface of 100% polyester fabric. On the other hand, for cotton and cotton/polyester blends, it can function to smooth the cotton fiber since the cotton is not uniform in thickness like polyester. Cotton and cotton/polyester canvas is regularly used as artistic canvas. 100% polyester canvas is commercial production canvas and is not suitable as artistic canvas. ***My testing shows clearly that the bottom priming/coating does not contribute to adherence.***" P.R. 3 at 123-124, C.R. 1 at 123-124. (emphasis added).

Defendant continues to perpetuate the flaw of not considering the crux of the scope that artist canvas requires "Priming/coating includes the application of a solution, designed to promote the adherence of artist materials". It is of no consequence that that Berger "repeatedly refers to CBM as a canvas in its Scope Request," describes CBM as the "'top-seller for' latex, UV, and solvent ink application to canvas," "markets CBM for use as 'canvas frames' and 'stretched canvas,'" and stated that it "sold [CBM] to companies that

print onto the canvas." Def.'s Resp. Br. at 11.

Defendant continues to rely on Commerce's cherry picking with its reliance on "Berger also stated that '[i]t is common sense that 'art reproduction' can occur on' the coated side of the fabric." *Id*. The full language clearly shows CBM contrary to it being a one-sided fabric and is otherwise out of scope of the case:

> " 'Canvas' is referenced in the data sheet as only general reference for what the product is, a coated fabric. There have been numerous scope rulings where 'canvas' was found not to be in scope. See Impact Images and Global Textiles, for example. If Commerce makes an in-scope decision on a 'canvas' term only, it would be unlawfully expanding the scope of the *Order* as discussed above. It is common sense that 'art reproduction' can occur on either the coated or uncoated side of the fabric. Moreover, 'art reproduction' is only a 'term of art' used for marketing purposes, among other applications. As marketed as an 'allrounder' as stated above, depending on the end-use need and viability (i.e., some ink applications to the coated side are not viable) as discussed above, Berger customers can apply various inks to either side of the merchandise. As stated numerous times throughout this application, it is clear that the bottom priming/coating does not "promote the adherence" of artistic materials." P.R. 3 at 39, C.R. 1 at 39.

Ecker too attempts to somehow connect marketing materials/product data to non-existent characteristic (i.e. Priming/coating includes the application of a solution, designed to promote the adherence of artist materials). Ecker's Resp. Br. 13. Usable for any purpose, including art reproduction or an ink jet claim, does cause the aforementioned requisite characteristic. Ecker's Resp. Br. 13, 19, 20-21. Ecker attempts to convert physical characteristics lacking in Berger's bottom priming/coating to supposed print canvas uses under the scope of the case. *Id*. at 21-23. Certainly Berger's CBM does not have a priming/coating that: is a "specific coating formula"; are "compounds utilized in making specialized latex paint"; is an acrylic latex gesso; is a "generations to come" gesso; resists yellowing; preserves the canvas; has greater adhesion; and that protect the canvas fibers against acidic deterioration with a buffered neutral PH sizing." Pla.'s Br. at 28.

9

Defendant also misses the crux of the scope in relying on that "Commerce reasonably found that this evidence submitted by Berger indicates that CBM is a 'canvas roll and/or printable canvas that is primed/coated and is a woven prepared painting and/or printing surface.' " Def.'s Resp. Br. at 11. Ecker also misses the same crux. Ecker's Resp. Br. 15. As demonstrated throughout the entire matter, CBM's priming/coating does not include the application of a solution, designed to promote the adherence of artist materials. Furthermore, the "woven prepared painting and/or printing surface" language is the typical unlawful scope expansion and void for vagueness as shown throughout the matter.

Defendant points out Commerce's interpretation error based on "the Tara Print Canvas Scope Ruling, in which Commerce determined that the print canvas at issue was subject to the *Order* because 'print canvases are specifically cited in the scope language as an example of subject merchandise.' " *Id*. Berger has clearly shown Tara's intentions that print canvases requires priming/coating that includes the application of a solution, designed to promote the adherence of artist materials. Pla.'s Br. at 28-30.

Like Commerce, Defendant mistakenly relies on ITC interpretations regarding "priming/coating" "promote" scope language as synonymous with "to accept". Def.'s Resp. Br. at 11. Berger has consistently held that Commerce has unlawfully relied on ITC's interpretation which has furthered scope expansion and offended void for vagueness principles. Pla.'s Br. at 13. Moreover, the Defendant wrongly falls for Commerce's unlawful shifting interpretations that resulted in scope expansion and void for vagueness. Certainly Commerce's shifts "to accept", "improves the receptivity", "allow for acceptance of", "improve[] the receptivity of canvas to", "increase[] the canvas' receptivity to artist materials", and "for a graphical purpose", and "prepared the canvas to

receive ink" caused the same and resulted in an unlawful decision." Def.'s Resp. Br. at

12-13, Pla.'s Br. at 12-20. Contrary to Defendant's belief, after considering the language

of the scope of the *Order*, primary interpretive sources, and Berger's description of CBM,

in accordance with 19 C.F.R. § 351.225(k)(1), Commerce unlawfully determined that

CBM is subject to the Oder. Def.'s Resp. Br. at 13.

      Defendant argues that Commerce did not ignore Tara's intent "Tara's specific

acrylic latex 'gesso' bottom 'adherence' priming/coating formula is a prerequisite to artist

canvas under the *Order*". Moreover, Ecker mistakenly believes that "It suffices for

coverage that a fabric is coated with 'a solution, designed to promote the adherence of

artist materials.' CBM is so coated. The scope language does not require it to be primed

with such a solution and Berger Textiles points to no textual support for such a

requirement." Ecker's Resp. Br. 15-16, 24. Tara's intent, that Commerce ignored, cannot

be clearer based on its on admissions: "its 'gesso' is a '***specific*** coating formula' with

'compounds utilized in making ***specialized latex paint'*** … '**You can't bake a cake with it,

and you can't build a house with it.' … 'It's critical to recognize that in order to

manufacture print canvas the exact same fabric, gesso and manufacturing process is

employed.'*****…** '**Print Canvas … manufactured in the ***same way***, using the same equipment

and ***same materials***, as other forms of Artist Canvas.' … "Print Canvas is ***identical in all

respects*** to other Artist Canvas, ***except for the additional priming with in ink receptive

topcoat*** that some print canvas still undergoes, and is produced by the same process on the

same machinery.' … 'The top coat, when used, is applied to canvas that ***already meets the

definition of "artist canvas" because it previously has been coated with gesso***' … "Tara

Materials' gesso ***is*** composed of Latex, titanium dioxide (Ti02), calcium carbonate

(CaCo3) and water. Tara Materials believes that **all artist canvas gesso uses these materials**.' " C.R. at 26-27, 33-36 P.R. at 26-27, 33-36.

Defendant, like Commerce, does not consider the relevance of two third party testing performed by experts. Def.'s Resp. Br. at 14-15. Both third party experts stated that CBM does not promote the adherence of artistic materials. C.R. at 26-27, 33-36 P.R. at 26-27, 33-36. It is clear that the agency disregarded an expert of 29 years from the expert's declaration that no chemical analysis or standardized tests are available to measure adherence. Def.'s Resp. Br. at 14-15. C.R. at 119-120, P.R. at 119-120. Moreover, "the slightly to absorption of ink" (Def.'s Resp. Br. 15) declaration by the third-party expert clearly is not relevant to the promote the adherence of artistic materials scope requirement. First, Commerce is again cherry picking language. Below is the full language:

> "The bottom priming/coating function is to stiffen the fabric and add opacity. It is a very thin layer and contributes only slightly to absorption of ink. It does not nor is it intended to provide adherence, adhesion of the ink."

Furthermore, the same expert stated over and over that CBM does not, in fact, promote the adherence of artistic materials. C.R. at 121-124, P.R. at 121-124. The same agency also knew that U.S. Customs and Border Protection tested the fabric only that it had a coating but not a test for adherence. C.R. at 15, P.R. at 15. The same agency did not test the physical characteristics such as in the Hand Truck cases. *Bond St. v. United States*, 774 F.Supp.2d 1251, 1252 (Ct. Int'l Trade 2011). In addition to Commerce's interpretation "contrary to the order's terms" and that it did "change the scope of the order", there should be no "significant deference to Commerce's interpretation of [the] order scope." *Global Commodity Group LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013). Additionally, the scope ruling under a clueless Commerce was hardly

"particularly within the expertise of [Commerce]." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998). Instead of considering the testing, it appears that Commerce again unlawfully relied on its ITC interpretations and its erroneously made up terms ("improves the receptivity of canvas", "increases the canvas' receptivity to artist materials" "increase the canvas' receptivity", "to accept paints or inks", "creating 'a surface for the graphic presentation of painted or printed images'") that expanded the *Order* and causes the case to be void for vagueness, as discussed above. Def.'s Resp. Br. at 15-16. Contrary to the Defendant and Commerce, the testing is highly relevant but unlawfully not considered even after Commerce acknowledged that "the third-party adherence testing results conclude that the CBM priming/coating solution does not promote the adherence of ink" *Id*. Thus, Commerce's decision was unreasonable, arbitrary, and not supported by law with substantial evidence.

Contrary to Defendant's assertion that "Commerce found Berger's own words about its CBM" concerning a patent with an "ink receiving layer" somehow shows CBM "to mean 'allow for acceptance of,' 'improve[] the receptivity of canvas to,' or 'increase[] the canvas' receptivity to' artist materials", the assertion is patently false. Def.'s Resp. Br. at 15. To the contrary, the patent demonstrates the existence of ink jet technology, such as Berger's, that does not promote the adherence of artistic materials. Pla.'s Br. at 36. Ecker stated that, "The [United States Patent 5,853,899] products it describes consist of a 'receiving medium comprising a substrate and an ink receiving layer.' That statement categorically establishes those products as artist canvas fitting the scope description." Ecker's Resp. Br. 14. The patent discusses only the ink receptive top coat and not any bottom priming/coating layer. Contrary to Ecker assertion that Berger has not explained a

"fundamental contradiction between the patent's coverage of 'a substrate and an ink receiving layer' " (*Id.*, *see also Id.* at 20-21), Berger's third-party expert declared that "These canvases are made by first priming (bottom coat) for the purpose of converting a fabric into a canvas. … The purpose of the top coat added to the primed (bottom coated) side is to hold the pigments up on the surface thereby optimizing print quality, color, and to enhance water resistance. … It does not nor is it intended to provide adherence, adhesion of the ink." C.R. 1 at 120-121, , P.R. 3 at 120-121. This is in opposite of Ecker's assertion that Berger, by "its own submission establishes the coating used on its products as "a solution, designed to promote the adherence of artist materials, such as paint or ink, to the fabric." Ecker's Resp. Br. 24. Thus, Ecker is not a manufacturer of the domestic like product. Ecker's Resp. Br. 4. See also Ecker's related meritless patent ink jet receiving mechanism arguments. Ecker's Resp. Br. 18. See also Ecker's related meritless CBM's topcoat does promote arguments. Ecker's Resp. Br. 18. Ecker instead tries to deflect from the elephants in the room stating that Berger somehow has not applied "substantial evidence" standard. *Id*. Not only did Berger succinctly describe the standard in its initial brief, including the arbitrary and capricious standard (Pla.'s Br. at 10), Berger went on to apply both standards as applicable in its briefs. The reweigh Commerce's fact findings Ecker argument is completely meritless.

Like Commerce in the Impact Images scope ruling, Defendant to attempts to rely on Commerce's expanding the scope of the *Order* and added confusion (open-ended interpretation) to the "adherence" term by interchanging it with receptive/receptivity terms as physical characteristics. Defendant missed that Commerce also introduced "allow for acceptance" to physical characteristics. Def.'s Resp. Br. at 17, Pla.'s Br. at 15-

16. Likewise in the Global Textile Blockout Fabric and Backlit Fabric scope rulings where Commerce continued to expand the scope of the *Order* and caused confusion (open-ended interpretation) to the "adherence" term by interchanging it with receptive / receptivity terms and using the allow for acceptance language. Commerce yet again muddied the waters by bringing in "add application" as additional physical characteristics. Def.'s Resp. Br. at 17, Pla.'s Br. at 16-17. In the RV Print scope ruling. Commerce yet again continued to expand the scope of the *Order* with its greatest leap yet. Most, if not all of language the "Commerce's Position" is unlawful and further causing confusion (open-ended interpretation) to the absolute requirement that "Priming/coating includes the application of a solution, designed to promote the adherence of artist materials, such as paint or ink, to the fabric". Instead, Commerce focused on "canvas" wording / being canvas alone causing merchandise to be under the *Order*, a new nongraphical purpose requirement, and a new uniform surface requirement, all not listed in the *Order* or the *Order*'s history. Def.'s Resp. Br. at 17, Pla.'s Br. at 18-19.

It is clear that both Commerce and Defendant miss the crux of the matter for the priming/coating requirement in stating "there is no requirement in the scope that the priming/coating be located on a specific portion of the artist canvas". Def.'s Resp. Br. at 18-19.  Tara confirmed, as outlined in this section above, print canvas has its "gesso" coating and an ink receptive topcoat. As previously stated in this matter, the facts are consistent that CBM's priming/coating does not "promote the adherence of artist materials" and does not concern "receptivity" as alleged by Commerce and Defendant. Def.'s Resp. Br. at 18-19. Berger has shown through its testing and third-party expert that

CBM has a priming/coating and a top coating, neither of which promotes the adherence of artist materials". C.R. at 120-123, P.R. at 120-123. Ecker attempts to attack Berger's assertion:

> "Berger Textiles' brief merely states that 'Commerce is again simply incorrect in terms of interpreting the scope language of the *Order* in terms of the CBM Scope Request. The facts are consistent that CBM's priming/coating does not 'promote the adherence of artist materials' and does not concern 'receptivity' and Berger has shown through its testing and third-party experts that CBM has a priming/coating and a top coating, neither of which 'promote[s] the adherence of artist materials'. Merely stating that 'Commerce is . . . incorrect' is woefully insufficient under the substantial evidence standard. Commerce made point by point, record-based findings regarding CBM's attributes. Berger Textiles has shown no deficiencies in those findings."

Def.'s Resp. Br. at 18-19. Clearly Berger showed deficiencies in Commerce's findings throughout its brief. As discussed further in this response brief, Berger demonstrates that Commerce did not consider the relevance of two third party testing performed by experts that both stated that CBM does not promote the adherence of artistic materials. Instead, Commerce unlawfully relied on its ITC interpretations and its erroneously made up terms.

Defendant asserts that "Berger never argued before Commerce 'that CBM lacks a priming/coating layer that is applied for graphical purposes' " or for receptivity of inks. Def.'s Resp. Br. at 19. Ecker is also confused in believing there is a graphical purpose/bottom priming/coating requirement and that Berger did not otherwise challenge Commerce. Ecker's Resp. Br. 16. Not only did Berger argue Commerce's unlawful additions of the graphical and receptivity requirement numerous times (Pla.'s Br. at 12-13, 15-19), Berger's third-party expert declared that the first priming (bottom coat) stiffens the fabric, provides whiteness and higher opacity, and absorbs water and glycol. Thus, the bottom priming/coating does not 'promote the adherence' of the inks." C.R. at 120, P.R. at 120.

Berger asserted that Commerce, although "there is no 'use' requirement expressly stated in the scope", unlawfully added "end-use restrictions" to its decision-making process. Def.'s Resp. Br. at 20. Defendant is simply incorrect that Berger's argument is misplaced, it relied on numerous end-use restrictions. *Id*. As stated in its brief, Commerce relied on many end-use restrictions during its review of k(2) factors for its k(1) analysis. Pla.'s Br. at 31-32.

Ecker asserts that, "Whatever differences there may be in the materials used for coating Ecker Textiles' products and CBM are irrelevant to the *Order*'s applicability." Ecker's Resp. Br. at 20, 24-24. This directly contradicts the intention of Tara in k(1) sources. Pla.'s Br. at 28-29. Among other similar intentions, Tara stated that "Print Canvas … manufactured in the ***same way***, using the same equipment and ***same materials***, as other forms of Artist Canvas." (emphasis added). *Id*. It is clear that Ecker did not consider case law recited in Berger's initial brief that requires Commerce to give deference to Tara's intentions. Pla.'s Br. at 14. Instead, Ecker states that Berger did not "even attempt to argue how and why those descriptions would in any way limit the descriptive language in the order." Ecker's Resp. Br. at 20.

Commerce did not conduct a comprehensive (k)(1) analysis of the record evidence to reasonably determine that CBM is subject to the *Order*. Def.'s Resp. Br. at 20. This Court should not uphold Commerce's determination because it is contrary to the *Order*'s terms and changes the *Order*'s scope. *Id*.  This Court should not uphold Commerce's analysis under 19 C.F.R. § 351.225(k)(1).

Commerce abandoned the interpretive framework unlawfully ignored substantial evidence submitted by Tara from the original investigation, including the descriptions of

the merchandise contained in the petition, the initial investigation, and the Commission's injury determinations that certain tempers were not subject to the underlying investigation. Commerce also unlawfully ignored substantial evidence submitted by Tara in its *Scope Ruling*. Commerce was required to address the (k)(1) factors and failure to address these factors renders the Scope Ruling unlawful, and the decision was unreasonable, arbitrary, capricious, and not supported by law with substantial evidence. Commerce's consideration of Berger's *Scope Request* and determination that the scope contains language that includes, or "may be reasonably interpreted to include" CBM is unlawful. Lastly, in its *Scope Request*, Berger demonstrated that the factors that Commerce is supposed to consider pursuant to the "(k)(2) factors" would cause Berger's CBM to be outside the scope of the *Order*, P.R.3 at 40, C.R.1 at 40. In its Scope Ruling, Commerce did not examine any of the (k)(2) factors, P.R.23 at 14. Commerce's failure to examine the (k)(2) factors renders its Scope Ruling as unsupported by substantial evidence.

## IV.    CONCLUSION AND RELIEF SOUGHT

Wherefore, Plaintiff respectfully requests that the Court:

a.  enter judgment in its favor;

b.  declare with respect to the issues raised in this Complaint that the *Order* is void for vagueness and unconstitutional, that Commerce unlawfully expanded the scope of the *Order*, and Berger's coated fabrics fall outside the scope of the *Order* (i.e., the product is expressly not covered by the plain language of the scope of the *Order*), and that the Scope Ruling is unsupported by substantial evidence and/or is otherwise not in

accordance with law;

c.  remand this matter to Commerce with instructions to issue determinations that Plaintiff's CBM are excluded from the scope of the *Order*;

d.  Order CBP to refund Plaintiff any monies collected on its imports as a result of the *Order*;

e.  Award Plaintiff a judgment for costs, including reasonable attorney fees, in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

f.  provide such other relief as the Court deems just and proper.

Respectfully submitted,
  /s/ Kyl J. Kirby
Kyl J. Kirby
**KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.**
1400 Lipscomb Street
Fort Worth, TX 76104
Tel: (214) 632-0841
*Counsel to Printing Textiles, LLC dba Berger Textiles*

Date: June 24, 2024

19

## WORD COUNT CERTIFICATE OF COMPLIANCE

Pursuant to the U.S. Court of International Trade's Standard Chambers Procedures 2(B)(l ), the undersigned ce1tifies that this brief complies with the word limitation requirement. The word count for Plaintiff Berger Plaintiff's Brief, as computed by KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.'s word processing system (Microsoft Word for 365), is 5,712 words.

Respectfully submitted,
 /s/ Kyl J. Kirby
Kyl J. Kirby
**KYL J. KIRBY, ATTORNEY AND COUNSELOR AT LAW, P.C.**
1400 Lipscomb Street
Fort Worth, TX 76104
Tel: (214) 632-0841
*Counsel to Counsel to Printing Textiles, LLC dba Berger Textiles*

Date: June 24, 2024