Slip Op. 24-110

UNITED STATES COURT OF INTERNATIONAL TRADE

PRINTING TEXTILES, LLC DBA BERGER
TEXTILES,

                              Plaintiff,

              v.

UNITED STATES,

                              Defendant,

              and

ECKER TEXTILES, LLC,

                              Defendant-Intervenor.

Before:  Timothy C. Stanceu, Judge

Court No. 23-00192

OPINION

Dated: October 8, 2024

[Denying plaintiff's motion for judgment on the agency record in an action contesting a ruling that a product is within the scope of an antidumping duty order]

*Kyl J. Kirby*, Kyl J. Kirby, Attorney and Counselor at Law, P.C., of Fort Worth, Texas, for plaintiff Printing Textiles, LLC d/b/a Berger Textiles.

*Christopher A. Berridge*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Franklin E. White, Jr.*, Assistant Director, and *Joseph Grossman-Trawick*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*George W. Thompson*, Thompson & Associates, PLLC, of Washington, D.C., for defendant-intervenor Ecker Textiles, LLC.

Stanceu, Judge:  Plaintiff Printing Textiles, LLC, d/b/a Berger Textiles ("Printing

Textiles" or "Berger Textiles"), contests a determination by the International Trade

Administration, U.S. Department of Commerce ("Commerce" or the "Department"),

that plaintiff's imports of "Canvas Banner Matisse" ("CBM") are within the scope of an

antidumping duty order on certain artist canvas from the People's Republic of China

("China").

Before the court is plaintiff's motion for judgment on the agency record under

USCIT Rule 56.2 (Feb. 26, 2024), ECF No. 19 ("Pl.'s Mot.").  The court will deny

plaintiff's motion and enter judgment in favor of defendant.

## I. Background

### A.  The Contested Determination

Following an administrative proceeding (the "scope inquiry"), Commerce issued

the contested determination as "Final Scope Ruling on the Antidumping Duty Order on

Certain Artist Canvas from the People's Republic of China: Berger Textiles' Canvas

Banner Matisse" (Aug. 15, 2023), P.R. 23 ("*Final Scope Ruling*").[1]  Commerce issued the

Final Scope Ruling in response to a "Scope Ruling Application" (or "Scope Request")

(Dec. 15, 2022) (P.R. 1–3) submitted by Printing Textiles ("*Scope Ruling Application*").

---

[1] Documents in the Joint Appendix (July 8, 2024), ECF Nos. 23 (public), 26 (conf.) are cited herein as "P.R. Doc. __."  All citations to record documents are to the public versions.

### B.  The Antidumping Duty Order

Commerce published the antidumping duty order involved in this litigation (the

"Order") as *Notice of Antidumping Duty Order: Certain Artist Canvas from the People's*

*Republic of China*, 71 Fed. Reg. 31,154 (Int'l Trade Admin. June 1, 2006) (the "*Order*").

### C.  Proceedings in the Court of International Trade

Plaintiff commenced this action in September 2023.  Summons (Sept. 14, 2023),

ECF No. 1; Compl. (Sept. 15, 2023), ECF No. 5.  Plaintiff filed its Rule 56.2 motion on

Feb. 26, 2024.  Pl.'s Mot.  Defendant opposed plaintiff's motion (Apr. 25, 2024), ECF

No. 20, as did defendant-intervenor (Apr. 25, 2024), ECF No. 21, and plaintiff filed a

reply (June 24, 2024), ECF No. 22.

The court asked the parties whether a document—the petition in response to

which Commerce initiated the antidumping duty investigation culminating in the

Order—had been placed on the administrative record that is now before the court.

Court's Inquiry (Sept. 12, 2024), ECF No. 28.  Defendant responded, informing the court

that only two pages of the petition (pages 1 and 8), submitted by plaintiff as an

attachment to the Scope Ruling Application, were on the administrative record and that

no party had requested that any other portions of the petition be included.  Def.'s Resp.

to the Court's Sept. 12, 2024 Letter (Sept. 20, 2024), ECF No. 29 ("*Def.'s Response to

Court's Inquiry*"); Ecker Textiles, LLC's Resp. to the Court's Sept. 12, 2024 Letter

(Sept. 20, 2024), ECF No. 30 (concurring that only pages 1 and 8 of the petition were on the record).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[2] Among the decisions that may be contested according to Section 516A is a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order." *Id*. § 1516a(a)(2)(B)(vi).

In reviewing the Scope Ruling, the court must set aside "any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id*. § 1516a(b)(1)(B)(i).

### B. Scope Language in the Order

In pertinent part, the scope language in the Order reads as follows:

> The products covered by this order are artist canvases regardless of dimensions and/or size, whether assembled or unassembled, that have been primed/coated, whether or not made from cotton, whether or not archival, whether bleached or unbleached, and whether or not containing an ink receptive top coat. Priming/coating includes the application of a

---

[2] Citations to the United States Code are to the 2018 edition. Citations to the Code of Federal Regulations are to the 2023 edition.

solution, designed to promote the adherence of artist materials, such as paint or ink, to the fabric. Artist canvases (*i.e.*, pre-stretched canvases, canvas panels, canvas pads, canvas rolls (including bulk rolls that have been primed), printable canvases, floor cloths, and placemats) are tightly woven prepared painting and/or printing surfaces.

*Order*, 71 Fed. Reg. at 31,155.

## C. Description of the Merchandise at Issue in this Proceeding

The Scope Ruling Application provided this general description of the merchandise for which Printing Textiles sought a scope ruling:

The Canvas Banner Matisse ("CBM") of the scope ruling request is 600 denier 100% polyester fabric woven (i.e., warp and weft) filament fiber, weighing approximately 270 GSM [grams per square meter], that has been coated with polyvinyl acetate / acrylate type polymers. One side of the fabric has been coated and is visible to the naked eye. The coated side has hydrophobic sealing and fireproof agents. The bottom priming/coating does not promote the adherence of artistic materials. The fabrics are imported as rolls in various lengths with no designs.

*Scope Ruling Application* at Cover Sheet. The Scope Ruling Application stated that the product is produced in and exported from China, *id.* at 3, and that "[w]idely, publicly known uses include, canvas (art reproduction/stretched), roll-up display system, banner product, display x-kite system, wall covering, décor applications, and tenting," *id.* at 4.

## D. The Final Scope Ruling

Commerce concluded in the Final Scope Ruling that the Canvas Banner Matisse at issue "is within the scope of the *Order*." *Final Scope Ruling* at 20. Commerce summarized its reasoning as follows:

> [W]e began by examining the CBM described in Berger Textiles' Scope
> Request in the context of the language of the scope of the *Order* and find
> that the description of the subject merchandise in the scope of the *Order*,
> coupled with the sources listed under 19 CFR 351.225(k)(1), are dispositive
> as to whether Berger Textiles' CBM products are within the scope of the
> *Order*.  In particular, we find that the CBM products are within the scope
> of the *Order* and, thus, no further analysis under 19 CFR 351.225(k)(2) is
> necessary.

*Id*. at 14.

### E.  Plaintiff's Claims

In its Rule 56.2 motion, Printing Textiles raises, essentially, two claims.  In one

claim, plaintiff attacks the Final Scope Ruling as unlawful on various grounds.  It argues

that in the Final Scope Ruling Commerce: (1) "fail[ed] to consider" and "misapplied"

the "(k)(1)" criteria of 19 C.F.R. § 351.225(k)(1), "thereby expanding the scope of the

*Order*," Pl.'s Mot. 7–25; (2) reached a result that is unsupported by substantial evidence,

*id*. at 30–35, 38, as well as "unreasonable, arbitrary," and "capricious," *id*. at 38;

(3) wrongly determined that the scope language "includes, or 'may be reasonably

interpreted to include'" Canvas Banner Matisse, *id*.; and (4) failed to apply the "(k)(2)"

factors of 19 C.F.R. § 351.225(k)(2), which, plaintiff argues, require that its product be

ruled to be outside the scope of the Order, *id*. at 38–39.

Plaintiff's second claim is directed not only at the Final Scope Ruling, *per se*, but

also at the Order itself.  According to Printing Textiles, the unconstitutional vagueness

of the Order, as applied to Printing Textiles by the Final Scope Ruling, denied it

"adequate notice" and "due process."  *Id*. at 25–28.

### F.  Claim Directed to the Final Scope Ruling

The court does not find merit in plaintiff's arguments that the Final Scope Ruling

must be set aside as an unreasonable interpretation of the scope language, as contrary to

the Department's regulation, as unsupported by substantial record evidence, or as

"unreasonable, arbitrary," and "capricious."

### 1.  The Department's Interpretation of the Scope Language Was Not *Per Se* Unreasonable

The court begins by considering the scope language of the Order.  The Order

applies to "artist canvases," a term for which the scope language contains a general

definition: "Artist canvases . . . are tightly woven prepared painting and/or printing

surfaces."  *Order*, 71 Fed. Reg. at 31,155.  By denoting that the term "artist canvases"

includes products in various forms, the parenthetical following the term "[a]rtist

canvases"—"(*i.e.*, pre-stretched canvases, canvas panels, canvas pads, canvas rolls

(including bulk rolls that have been primed), printable canvases, floor cloths, and

placemats)," *id.*—indicates that the term was intended to have a broad meaning.

Of particular relevance to this case is the mention of "prepared . . . *printing*

surfaces" in the definition of "artist canvases" and the express inclusion of "*printable*

canvases" within the scope of the Order.  *Id.* (emphases added).  Plaintiff described "art

reproduction" as one of the "[w]idely, publicly known uses" of Canvas Banner Matisse.

*Scope Ruling Application* at 4.  Using terms contained in the scope language, Commerce

stated as findings that Canvas Banner Matisse "is a woven prepared painting and/or

printing surface" and "is a canvas roll and/or printable canvas." *Final Scope Ruling*

at 15. Commerce summarized its conclusion as follows: "Information placed on the

record demonstrates that CBM is an artist canvas, as defined by the language of the

scope." *Id.* at 14.

The Order states that it applies to "artist canvases . . . that have been

primed/coated." *Order*, 71 Fed. Reg. at 31,155. In the next sentence, the scope language

states that "[p]riming/coating includes the application of a solution, designed to

promote the adherence of artist materials, such as paint or ink, to the fabric." *Id*. The

gist of plaintiff's "scope language" argument is that "CBM has a priming/coating and a

top coating, neither of which 'promote[s] the adherence of artist materials.'" Pl.'s

Mot. 36. In support of this argument, Printing Textiles cites results of various

independent tests conducted on its product by "Dr. Ray Work and 20 | 10 Labs." *Id*.

at 33 ("Both experts found that CBM's priming/coating does not 'promote the adherence

of artist materials' as detailed in Berger's Scope Request.") (citations omitted). Plaintiff

argues that testing demonstrated that the coated side performed the same or worse than

the uncoated side with respect to adherence. *Id*. at 33–34 (citation omitted).

The court does not agree with plaintiff's argument that Commerce unreasonably

interpreted the scope language. This argument rests on a single sentence in that

language: "Priming/coating *includes* the application of a solution, designed to promote

the adherence of artist materials, such as paint or ink, to the fabric." *Order*, 71 Fed. Reg.

at 31,155 (emphasis added).  While this sentence can be interpreted as limiting the scope to canvases with priming/coating designed to promote the adherence of artist materials, it uses the term "includes."  Because "includes," particularly in the context of other scope language, also may be interpreted to mean "includes, but is not limited to . . . ," the word "includes" introduces ambiguity as to whether "priming/coating" *must* be designed to promote the adherence of artist materials for a canvas to be included within the scope as an "artist canvas."  The use of the word "includes" makes it uncertain whether the sentence is intended as a definition of the term "primed/coated" as used in the previous sentence.  Moreover, the words "designed to promote the adherence of artist materials," if not ambiguous, are also susceptible to varied interpretations.

Plaintiff maintains that "the reference 'designed to promote the adherence of artist materials' in the scope language compels a narrow interpretation of the words 'priming/coating'" that, in plaintiff's view, requires the exclusion of its product from the scope of the Order.  Pl.'s Mot. 11, 24–25.  The scope language requires for inclusion in the Order that the material "have been primed/coated" but does not rigidly or unambiguously require that the priming/coating function to "promote" adherence of artist materials by increasing the "adherence" to a level beyond that of untreated material.  It was sufficient, in the Department's view, that the priming/coating applied to Canvas Banner Matisse imparted characteristics to the fabric that brought it within the definition the scope language set forth for an "artist canvas."  "Specifically, Berger

Textiles' submission states that CBM is a 'polyester fabric woven (*i.e.*, wrap [sic] and weft) filament fiber . . . that has been coated with polyvinyl acetate/acrylate type polymers.'" *Final Scope Ruling* at 14.  Relying on a declaration by Ray A. Work, III, Ph.D. ("Work Declaration"), which Printing Textiles provided in the Scope Ruling Application, Commerce found that "CBM is primed/coated 'for the purpose of converting a fabric into a canvas'" and that "[t]he priming/coating 'is required to stiffen the fabric{,} giving it the stiffness properties of a canvas' and 'provides whiteness and higher opacity to the translucent polyester fabric.'"  *Id*. at 14–15 (citing *Scope Ruling Application* at Attachment 7 (Decl. of Ray A. Work, III, Ph.D. ("*Work Decl.*"))).  Plaintiff does not demonstrate that the stiffening, whitening, and opacity do not relate to the use of the product as a surface designed for, and suitable for, the printing of images using paint or ink, and the Work Declaration provided substantial evidence to support the Department's findings.[3]

_____

[3] The Work Declaration provided, in relevant part:

> These canvases are made by first priming (bottom coat) for the purpose of converting a fabric into a canvas.  The priming (bottom coating) is required to stiffen the fabric giving it the stiffness properties of a canvas verses [sic] those of a flexible fabric.  In addition it provides whiteness and higher opacity to the translucent polyester fabric.  The priming layers (bottom coatings) also absorb the water and glycol which makes up 95% of the water based ink jet ink.  Ink jet printing deposits extremely small ink droplets on the surface of any material through the air.  It is received independent of coatings or the nature of the substrate (whatever material falls on).  This occurs whether printing on the coated

(continued . . .)

In summary, the Department's interpretation of the scope language, one sentence of which is ambiguous and otherwise susceptible to more than one interpretation, was not *per se* unreasonable.  As discussed below, Commerce resolved ambiguity by interpreting sources of information identified in 19 C.F.R. § 351.225(k)(1).

### 2. Commerce Did Not Fail to Consider, or Misapply, the "(k)(1)" Sources to "Expand" the Scope of the Order

The Department's regulation provides that "[i]n determining whether a product is covered by the scope of the order at issue, the Secretary [of Commerce] will consider the language of the scope and may make its determination on this basis alone if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive."  19 C.F.R. § 351.225(k)(1).  The regulation provides, further, that:

> The following primary interpretive sources may be taken into account under paragraph (k)(1) introductory text of this section, at the discretion of the Secretary:
>
> (A) The descriptions of the merchandise contained in the petition pertaining to the order at issue;

---

side or the uncoated side.  The primer (bottom coat) remains on the surface of the fabric with very little or no penetration to the back (uncoated) side.  Aqueous ink jet inks are used widely today for printing directly onto fabrics without primers (bottom coatings) like T-shirt printers using aqueous pigmented inks.  The purpose of the top coat added to the primed (bottom coated) side is to hold the pigments up on the surface thereby optimizing print quality, color, and to enhance water resistance.

*Work Decl.* at 2–3.

(B) The descriptions of the merchandise contained in the initial investigation pertaining to the order at issue;

(C) Previous or concurrent determinations of the Secretary, including prior scope rulings, memoranda, or clarifications pertaining to both the order at issue, as well as other orders with same or similar language as that of the order at issue; and

(D) Determinations of the [U.S. International Trade] Commission pertaining to the order at issue, including reports issued pursuant to the Commission's initial investigation.

*Id*. § 351.225(k)(1)(i)(A)–(D).  In addition to the above-described "primary interpretive sources," the regulation provides that "[t]he Secretary may also consider secondary interpretive sources under paragraph (k)(1) introductory text of this section, such as any other determinations of the Secretary or the Commission not identified above, Customs rulings or determinations, industry usage, dictionaries, and any other relevant record evidence."  *Id*. § 351.225(k)(1)(ii).

The regulation provides, further, that "[i]f the Secretary determines that the sources under paragraph (k)(1) of this section are not dispositive, the Secretary will then further consider the following factors: (A) The physical characteristics (including chemical, dimensional, and technical characteristics) of the product; (B) The expectations of the ultimate users; (C) The ultimate use of the product; (D) The channels of trade in which the product is sold; and (E) The manner in which the product is advertised and displayed."  *Id*. § 351.225(k)(2)(i).

According to Printing Textiles, Commerce "fail[ed] to consider" and "misapplied" the "(k)(1)" criteria of 19 C.F.R. § 351.225(k)(1), "thereby expanding the scope of the *Order*." Pl.'s Mot. 7–25. Plaintiff characterizes prior scope rulings with which it disagrees as evidence of its claimed expansion of the scope of the Order, *id*. at 15–25, which it describes as "scope creep," *id*. at 22.

The court sees no merit in plaintiff's argument that Commerce "failed to consider" (k)(1) sources in reaching its conclusion. In addition to the scope language itself, the Final Scope Ruling cited two "primary interpretive sources" identified in 19 C.F.R. § 351.225(k)(1): the report of the U.S. International Trade Commission ("ITC") from the antidumping duty investigation, *Artists' Canvas from China, Inv. No. 731-TA-1091 (Final)*, USITC Pub. 3853 (May 2006) ("*ITC Report*"), *id*. at 16, and its own prior scope rulings, *id*. at 16–20. Commerce was not required by its regulation to consider *all* (k)(1) sources specified in the regulation: the primary interpretive sources are to be considered "at the discretion of the Secretary." 19 C.F.R. § 351.225(k)(1)(i).

In making its argument, plaintiff alludes to the petition as a (k)(1) source, arguing that "'Commerce should give consideration to petitioners' intended meaning,'" Pl.'s Mot. 9 (quoting *Mitsubishi Polyester Film, Inc. v. United States*, 41 CIT __, 228 F. Supp. 3d 1359, 1378 (2017)), implying that Commerce failed to do so in the Final Scope Ruling. Plaintiff attached pages 1 and 8 of the petition to the Scope Ruling Application, but nothing on page 1 supports plaintiff's argument while page 8, under a heading

titled "Production Process," provides: "Artist canvas is produced as follows . . . The raw

canvas is coated with a specific coating formula on the coating line.  These formulas are

mixed using various chemical compounds utilized in making specialized latex paint

that is receptive to specific artist paints or printing inks."  *Scope Ruling Application* at

Attachment 20.  Printing Textiles asserts the petitioner intended that a "specific acrylic

latex 'gesso' bottom 'adherence' priming/coating formula is a prerequisite to artist

canvas under the *Order*," arguing that Canvas Banner Matisse, which uses a different

formula, does not fit this description.  Pl.'s Mot. 30.

        In responding to the court's September 26, 2024 inquiry, defendant informed the

court as follows:

> After consulting with the U.S. Department of Commerce, defendant
> confirmed that, other than pages 1 and 8 of the petition which were
> included in plaintiff's scope ruling application, no other portions of the
> petition were placed on the administrative record.  No party requested
> that the entire petition be placed on the record during the administrative
> process and Commerce did not place the petition on the record on its own.
> Beyond the two pages included in the scope ruling application, Commerce
> did not consider or rely on the petition in making its scope ruling in this
> case.

*Def.'s Response to Court's Inquiry* at 1–2.

        It is not clear what effect the language on page 8 of the petition may have had on

the Department's determination in the Final Scope Ruling.  Nevertheless, plaintiff has

not demonstrated that Commerce acted contrary to its regulation with respect to the

petition as a primary interpretive source identified in 19 C.F.R. § 351.225(k)(1)(i)(A).

The scope language Commerce developed during the investigation and chose to include in the Order does not impose a specific formulation by which a canvas must be "primed/coated" and further provides that a canvas is included within the Order "whether or not containing an ink receptive top coat." *Order*, 71 Fed. Reg. at 31,155. Thus, Commerce ultimately adopted, and incorporated in the language of the Order, a scope broader than that which plaintiff advocates based on page 8 of the petition. Excerpts from the petition other than page 8 may have been relevant to a consideration of plaintiff's argument, but plaintiff chose not to place any such material on the record during the scope inquiry.

Nor can the court agree with plaintiff's argument that Commerce "misapplied" the (k)(1) sources. Plaintiff's "(k)(1)" arguments and its related "scope creep" arguments can be viewed as variations on its argument, rejected above, that the scope language has been unreasonably interpreted. The premise of these arguments is that in certain of its past scope rulings interpreting the scope of the Order, Commerce "unlawfully expanded the scope of the *Order*" such that "Commerce's unlawful interpretations render the language, priming/coating includes the application of a solution, designed to promote the adherence of artist materials, to mere surplusage." Pl.'s Mot. 24. But treating the ambiguous sentence as other than "mere surplusage" would not cure the defect in plaintiff's argument. As the court has explained, the sentence does not compel the exclusion of Canvas Banner Matisse from the scope of the

Order, either when read in isolation or, in particular, when read in context with other scope language.  Commerce was not required to interpret this ambiguous sentence in the narrow way that Printing Textiles advocates and permissibly resorted to the (k)(1) sources in interpreting the scope language as a whole.

Beyond its unconvincing "unreasonable interpretation" argument directed to the scope language, *id.* at 24–25, Printing Textiles does not make a prima facie case that the (k)(1) sources were somehow "misapplied," *id.* at 7.  Plaintiff disagrees with several of the prior scope rulings Commerce cited, *see Final Scope Ruling* at 4–7, but its disagreement does not, by itself, invalidate those rulings as (k)(1) sources.  In the Final Scope Ruling, Commerce found, with respect to Canvas Banner Matisse, that "the record evidence indicates that the primed/coated side of the fabric is *receptive* to artist materials, consistent with our prior scope rulings."  *Id.* at 15 (emphasis added).

As Commerce recognized in the Final Scope Ruling, Printing Textiles did not contend, and declined to state, that users of Canvas Banner Matisse use only the uncoated side of the fabric for the printing of images.  *Id*. at 18.  Commerce concluded that materials identified in 19 C.F.R. § 351.225(k)(1) "demonstrate that Commerce and the ITC have defined 'promote the adherence' of artist materials to mean 'allow for the acceptance of,' 'improve{ } the receptivity of canvas to,' or 'increase{ } the canvas' receptivity to' artist materials."  *Id*. at 17.  Noting that Berger Textiles submitted results of third-party testing in an effort to show that the priming/coating did not promote the

adherence of ink, Commerce reasonably concluded that "the ITC and our prior scope rulings have not interpreted 'adherence' so narrowly." *Id*. at 16 (citing *ITC Report* at 3; Final Scope Ruling: RV Print Factory LLC's Coated Fabrics (Sept. 29, 2022) at 14).

In summary, Commerce did not fail to consider, or misapply, the (k)(1) sources in interpreting "artist canvases," *Order*, 71 Fed. Reg. at 31,155, to include Canvas Banner Matisse.

### 3.  The Final Scope Ruling Is Supported by Substantial Evidence

Printing Textiles argues that the court must invalidate the Final Scope Ruling on the ground that it is unsupported by substantial evidence on the record of the administrative proceeding.  Pl.'s Mot. 38–39.  The court disagrees.

Among the record information Commerce cited in support of its conclusion were numerous disclosures in the Scope Ruling Application, including its attachments. Commerce noted that "Berger Textiles states that CBM enters the United States 'as rolls of coated fabric' and identifies several '{w}idely, publicly known uses,' including 'canvas (art reproduction/stretching), roll-up display system, banner product, display x-kite system, wall covering, décor applications, and tenting.'" *Final Scope Ruling* at 15 & n.57 (citing *Scope Ruling Application* at 4, 29, 32, 34, and Attachment 10 ("Data Sheet for Canvas Banner Matisse" ("Remarks: Topseller!  Matt economy canvas for art reproduction, roll-ups, banners etc. / Important for Latex-print: glossy print with high color brilliance, water- & scratch-resistance . . ."))).  Commerce mentioned that "[i]n fact,

Berger Textiles identifies CBM as the 'top-seller for' latex, UV, and solvent ink

application to canvas." *Id*. (citing *Scope Ruling Application* at Attachment 10).

Plaintiff fails to confront the significance of the evidence in its own Scope Ruling

Application that Canvas Banner Matisse is suitable for use, and is used, as a canvas to

which printed images, including "art reproduction," are applied.  The record also

contains substantial evidence that Canvas Banner Matisse is "primed and coated" and

that the priming/coating contributes to characteristics of the product allowing it to be

used as artist canvas (by providing, for example, stiffness, whiteness, and opacity).  *Id*.

In conclusion, the evidence considered on the whole is sufficient to support the

various critical findings, and the ultimate determination, by Commerce that Canvas

Banner Matisse is described by the term "artist canvases" as used in the Order.

### 4.  The Final Scope Ruling Is Not Unreasonable, Arbitrary, or Capricious

In support of its motion, Printing Textiles includes a make-weight argument that

the Final Scope Ruling is "unreasonable," "arbitrary," and "capricious."  Pl.'s Mot.

28–39.  Plaintiff fails to explain how the court plausibly could apply such a standard to

set aside the Final Scope Ruling.  Commerce based this determination on an

interpretation of the scope language of the Order that was not unreasonable, on

findings grounded in the Scope Ruling Application itself that were supported by

substantial record evidence, and on a consideration of the sources identified in 19 C.F.R.

§ 351.225(k)(1).

### 5.  Commerce Was Not Required to Address the "(k)(2)" Factors Separately or Individually

Plaintiff argues that Commerce erred in failing to consider the factors identified in 19 C.F.R. § 351.225(k)(2), under which, it maintains, Commerce would have been required to conclude that Canvas Banner Matisse is not subject to the Order.  Pl.'s Mot. 38–39.  Specifically, Printing Textiles argues that "Commerce did not examine any of the (k)(2) factors" and that its failure to do so "renders its *Scope Ruling* as unsupported by substantial evidence."  *Id*. at 39.  Plaintiff misinterprets the Department's regulation and fails to recognize that Commerce, when examining record evidence described in the (k)(1) sources, considered certain factors identified in § 351.225(k)(2).

The "sources" identified in § 351.225(k)(1) and the "factors" identified in § 351.225(k)(2) are not mutually exclusive.  In reaching a decision on Canvas Banner Matisse, Commerce, based on information that Printing Textiles itself provided in seeking a scope ruling, considered "physical characteristics," "ultimate" uses, and marketing material (*see* Data Sheet for Canvas Banner Matisse).  These are factors specifically identified in subsection (k)(2) but also within the ambit of the "sources" specified in subparagraph (k)(1).  Nothing in the regulation precluded Commerce from doing so.  The regulation provides that the Secretary, in applying subsection (k)(1), "may also consider secondary interpretive sources . . . such as any other determinations of the Secretary or the Commission not identified above, Customs rulings or

determinations, industry usage, dictionaries, and *any other relevant record evidence*."  *Id*.

§ 351.225(k)(1)(ii) (emphasis added).

Relevant record evidence necessarily would include the evidence provided in the

Scope Ruling Application itself.  In this instance, such evidence supported various

critical findings, including findings that Canvas Banner Matisse is a "canvas," that it has

"priming/coating" that imparts stiffness, whiteness, and opacity, and that "art

reproduction" is among the "[w]idely, publicly known uses" of the product.  Based on

the record evidence considered as a whole, which was obtained from "sources"

described in § 351.225(k)(1) and which also pertained to "factors" described in

§ 351.225(k)(2), Commerce concluded that this product is a "printable" canvas and

permissibly reached the ultimate conclusion that it is an artist canvas within the scope

of the Order.  Contrary to plaintiff's interpretation, the regulation did not require

Commerce to address the (k)(2) factors separately or individually.

### G.  Claim that the Order Is Unconstitutionally Vague and, as Applied to Plaintiff by the Final Scope Ruling, a Due Process Violation

Printing Textiles urges the court to set the Final Scope Ruling aside as unlawful

because, in its view, the Order is unconstitutionally vague and, as applied to plaintiff by

the Final Scope Ruling, "raise[s] serious due process concerns."  Pl.'s Mot. 25–28.

Plaintiff attempts to support its claim with citations to various judicial decisions, *id*. at

25–27, none of which establishes a rule of law upon which the court could invalidate the

decision contested in this litigation.

Viewed in light of the terms in the scope language, Canvas Banner Matisse is a "printable canvas" widely used for art reproduction, as the disclosures in plaintiff's own Scope Ruling Application aptly demonstrate. The court has identified an ambiguous sentence in the scope language of the Order, but that sentence, when considered in light of the scope language on the whole, is insufficient to render the entire scope language unconstitutionally vague and, on that ground, a denial of due process. While the sentence could have been drafted to be more precise, the scope language on the whole is sufficiently detailed and descriptive that anyone importing Canvas Banner Matisse, or a similar product, was on notice that such a product reasonably could be considered to be subject merchandise.

To the extent Printing Textiles, after considering the scope language, was still in doubt as to whether its product was within the scope of the Order, it had resort to the scope ruling procedure in Department's regulations, of which it availed itself.

In summary, the court finds no merit in plaintiff's due process claim.

### III. CONCLUSION

For the reasons stated above, the court concludes that both of the claims Printing Textiles asserts in contesting the Final Scope Ruling are meritless.

The court will deny plaintiff's motion for judgment on the agency record and, in accordance with USCIT Rule 56.2(b), enter judgment in favor of the United States.

_/s/ Timothy C. Stanceu_

Timothy C. Stanceu

Judge

Dated: October 8, 2024
         New York, New York